UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **DEENA THORNTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 2:13-cv-161-WTL-WGH |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Deena Thornton requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income benefits ("SSI"). The Court rules as follows.

### I. PROCEDURAL HISTORY

Thornton filed her application for SSI alleging disability beginning in April 2000. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an administrative law judge ("ALJ"). On February 9, 2012, Thornton and her counsel appeared before an ALJ for a hearing, at which a vocational expert also testified. In a decision dated February 16, 2012, the ALJ determined that Thornton was not disabled under the terms of the Social Security Act ("the Act"). The Appeals Council denied Thornton's request for review of the ALJ's decision, and Thornton filed this timely action for judicial review.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. ' 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. ' 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. ' 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. ' 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. ' 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. ' 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. ' 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

### III. THE ALJ'S DECISION

The ALJ found at step one that Thornton had not engaged in substantial gainful activity since the date of her application for SSI, July 9, 2010. At steps two and three, the ALJ concluded that Thornton had the severe impairments of COPD, degenerative disc disease, osteoarthritis, left ulnar neuropathy across the left elbow, early right carpal tunnel syndrome, coronary artery disease, diabetes, anxiety disorder, bipolar disease, mood disorder, posttraumatic stress disorder, depressive disorder, substance dependence, and borderline personality traits, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Thornton

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is further limited to unskilled work which does not involve detailed or complex instructions, no more than superficial interaction with others, with the option to change positions every 30 minutes, no more than occasional

>gripping with the left nondominant hand, no more than occasional reaching above shoulder level, no kneeling or squatting all the way down to the floor, and no concentrated exposure to odors, dusts, gases, or other pulmonary irritants.

Record at 19. Given this residual functional capacity ("RFC"), the ALJ concluded that Thornton was unable to perform her past relevant work as a fast food worker, buffer, cashier, or punch tender. The ALJ then determined that, considering her age, education, work experience, and RFC, Thornton was able to perform a significant number of jobs existing in the national economy, including office helper, office mail clerk, and courier. Therefore, the ALJ determined that Thornton was not disabled as defined by the Act.

## IV. **DISCUSSION**

The facts of record, including the details of Thornton's medical treatment, are set forth quite thoroughly in Thornton's brief and need not be repeated here.

Thornton argues that the ALJ's decision is flawed in several respects. Each of the issues she raises is discussed, in turn, below.

*Analysis of Psychological Impairments*

Thornton takes issue with the fact that the "only limitations due to psychological impairments that were found by the ALJ were no detailed or complex instructions and no more than superficial interaction with others." Thornton's Brief at 22. Thornton argues that the ALJ erred by saying she assigned great weight to the psychiatric consultants but then not reflecting the limitations the consultants found in her RFC. To the contrary, the ALJ's RFC is consistent with the opinions of the psychiatric consultants, who found that Thornton could perform "at least simple repetitive tasks" and "may benefit from an environment with little to no contact with coworkers or the general public." The ALJ just used slightly different words to convey the same type of limitations.

4

*The RFC Determination and the Vocational Expert's Testimony*

Next, Thornton argues that the ALJ erred in including the need to change positions every thirty minutes without defining more clearly what she meant by that. The Court disagrees. The hearing transcript reveals that the ALJ's hypothetical question posed to the vocational expert included the need to alternate between sitting and standing every thirty minutes because Thornton "testified that she can sit or stand for about thirty minutes." Transcript at 77. There is simply no indication that the vocational expert did not understand what the ALJ meant.

Thornton also argues that the vocational expert's testimony is not supported by substantial evidence. Her argument on this issue, in total, is as follows:

> Because the need to change position every thirty minutes is not more clearly defined, it is impossible to determine if the jobs cited by the vocational expert can truly be performed. The ALJ stated that there would be no skills that would transfer to the sedentary level. The need to change position every thirty minutes means that Ms. Thornton is not capable of performing the prolong [sic] standing involved with light work and the prolonged sitting involved with sedentary work. SSR 83-12. Unskilled work is typically structured in a way that a person cannot sit or stand at will. The jobs cited by the ALJ are all unskilled (office helper (DOT 239.567-010); office mail clerk (DOT 209.687-026); courier (DOT 220.663-010)). These jobs are identified by the rulings as being ones that would not likely permit someone to change position at will. This harmful error needs to be resolved.

Thornton's Brief at 20-21 (record citations omitted). While Thornton may be correct that the jobs of office helper, office mail clerk, and courier would not permit changing position at will, the ALJ did not find that Thornton had that requirement; she only found that she needed to change position—alternate between sitting and standing—every thirty minutes, and the vocational expert testified that the jobs in question would permit her to do that. The ruling cited by Thornton, SSR 83-12, does not suggest that there are no unskilled jobs that permit alternating between sitting and standing; it states only that a vocational expert should be consulted "to

clarify the implications for the occupational base" for such a restriction. The ALJ did just that in this case; there is no error.

*Psoriasis*

Thornton argues that the ALJ erred in failing to address the fact that Thornton suffered from psoriasis in 2010 and 2011, arguing that she could have met or equaled Listing 8.05 for a closed period of time. Neither Thornton nor her counsel made mention of psoriasis at her hearing, even though the ALJ began the hearing by asking her counsel to explain "exactly what's been preventing Ms. Thornton form being able to work." Record at 35-39. "[A social security] claimant represented by counsel is presumed to have made his best case before the ALJ," S*kinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (*quoted in Pepper*, 712 F.3d at 367), and where, as here, the ALJ gave counsel ample opportunity to identify the impairments that affected the claimant's ability to work, the ALJ cannot be faulted for failing to address impairments that were not so identified.

Even if the ALJ should have addressed Thornton's psoriasis, the fact remains that a claimant has the burden of establishing that she meets or equals all of the requirements of a given listing, *see, e.g., Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012), and here Thornton has not pointed to any evidence of record on which such a finding could be based. Listing 8.05 requires "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 CFR Pt. 404, Subpt. P, App. 1. While Thornton clearly had skin lesions for more than three months, the record does not indicate that they satisfied the definition of "extensive":

> 1. Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

>a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
>b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
>c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

Thornton has pointed to nothing in the record that suggests that her psoriasis had a "very serious" effect on her ability to use her hands or to ambulate, or that her psoriasis caused any other type of "very serious limitation." Accordingly, Thornton has not demonstrated any basis for remand with regard to this issue.

*Credibility Determination*

Thornton argues that the ALJ failed properly to explain the basis for her finding that Thornton's testimony about her subjective complaints was not fully credible. The Court agrees.[1]

"In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. ' 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not

---

[1] The Court notes that, as is so often the case, the ALJ's credibility discussion begins with the finding that "the claimant's statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with" the ALJ's assessment of her residual functional capacity. The Seventh Circuit has criticized this language as "meaningless boilerplate seen frequently in decisions from ALJs," has "criticized this template as unhelpful," and has "explained that it backwardly 'implies that the ability to work is determined first and is then used to determine the claimant's credibility.'" *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)). "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing." *Shauger*, 675 F.3d at 694 (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir.2011) and *Parker*, 597 F.3d at 921-22).

discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted).

In this case, the ALJ explains that she found Thornton's testimony about her subjective symptoms to be something less than fully credible because "[t]he description of the symptoms and limitations that the claimant has provided throughout the record has generally been inconsistent and unpersuasive [and] she has not generally received the type of medical treatment one would expect from a totally disabled individual." Record at 19. However, the ALJ does not point to any particular inconsistent descriptions given by Thornton, and the Court's review of the record reveals nothing that obviously falls into that category. Neither does the ALJ explain what makes Thornton's descriptions "unpersuasive," and in any event, to say that Thornton is not credible because her testimony is "unpersuasive" is unhelpfully circular. Finally, the ALJ does not explain—let alone provide any support for—her opinion that Thornton's medical treatment is not "the type . . . one would expect from a totally disabled individual." There is no indication that Thornton has failed to seek medical care for her impairments or that she has been noncompliant with her physicians' suggested treatments. In fact, Thornton has been under the regular care of several medical providers for both her physical and her mental impairments; she takes numerous medications; she has had a variety of tests; she has completed at least one course of physical therapy; and she has attended therapy sessions and seen mental health care providers regularly. This does not necessarily mean that she is disabled, of course, but her course of treatment is not so sparse as to support a finding that she does not experience disabling symptoms.

"[A]n ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing

*Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir.2009)). The ALJ failed to do so in this case. Remand is necessary to address this error.

*Weight Assigned to Treating Physician and Therapist*

The ALJ assigned "limited weight" to the opinions of Thornton's treating physician, Dr. Lulich, and her treating mental health therapist, stating that both were based upon subjective complaints rather than objective evidence and were not consistent with the record as a whole. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). The Court agrees with Thornton that the ALJ failed adequately to support her decision to give these opinions only limited weight, a problem that is compounded by the lack of basis for the ALJ's credibility determination. This should be addressed on remand.

## V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 06/04/2014

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication